IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2015 Session

## IN RE B.C.

**Appeal from the Chancery Court for Obion County**
**No. 29702     W. Michael Maloan, Chancellor**

_____

**No. W2015-00507-COA-R3-PT – Filed December 11, 2015**
_____

This is a termination of parental rights case. Mother appeals the termination of her parental rights on the ground of abandonment by willful failure to visit in the four months prior to the filing of the petition to terminate her parental rights. Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(i). Mother also appeals the trial court's finding that termination of her parental rights is in the child's best interest. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

James T. Powell, Union City, Tennessee, for the appellant, J.P.

David L. Hamblen, Union City, Tennessee, for the appellee, T.M.

**OPINION**

**I. Background**

The minor child at issue in this case, B.C., was born in April of 2006, to Appellant J.P.[1] The child's natural father is W.C. Although he was served with the petition for

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names

adoption, W.C. failed to answer or to enter any appearance in this case, and the trial court terminated his parental rights by default. W.C. is not a party to this appeal.

Allegedly due to Appellant's young age (she was 18 years old when B.C. was born) and her inability to adequately provide for the child, approximately three months after B.C. was born, Appellant voluntarily placed B.C. with T.M. ("Appellee") and agreed that T.M. should have guardianship over the child. The Obion County Juvenile Court entered the guardianship order, and the minor child has resided with Appellee since that time.[2] Initially, there was no order on visitation; however, according to the trial court's order, Appellant was granted every-other-weekend visitation in July of 2009. According to the trial court's order, Appellant was "charged with child abuse of [B.C.] [(the details are not in the record)] in May of 2010, and the Obion County Juvenile Court suspended her visitation . . . ." Appellant received counseling for one month and pled guilty to a misdemeanor child abuse charge in the Obion County General Sessions Court. Although Appellant's visitation was restored, there is no evidence in the record that Appellant ever exercised her court-ordered visitation. In February of 2012, Appellant filed a petition for contempt in the Obion County Juvenile Court.[3] By her petition, Appellant stated that Appellee had denied her visitation with B.C. and that Appellant had not visited with the child since the summer of 2011. Although she filed the petition, it is undisputed that Appellant failed to appear on the scheduled court date, and so her petition was dismissed.

Thereafter, on March 14, 2012, Appellee filed a petition for adoption in the Chancery Court for Obion County (the "trial court"). By her petition, Appellee sought termination of Appellant's (and W.C.'s) parental rights and for adoption of the child. The sole ground for termination of Appellant's parental rights was abandonment by willful failure to visit. Appellant filed a response to the petition on July 19, 2012. By order of September 12, 2012, the trial court appointed a guardian ad litem to represent the child. The trial court also ordered a home study of T.M.'s home before proceeding to hearing. By order of September 26, 2013 and based on the court's previous finding that Appellant is indigent, the court

---

so as to protect their identities.

[2] We note that the Juvenile Court record is not included in our appellate record. Accordingly, we take all information regarding the Juvenile Court proceedings from the trial court's orders and from the testimony at the hearing.

[3] Appellee testified that Appellant's motivation for filing of the petition in the Juvenile Court was based on the fact that Appellant thought she had been excluded from B.C.'s birthday party. However, Appellee testified that there was no party and that she only had cake and ice cream at the home of Appellee's friend.

appointed an attorney to represent her.

On February 6, 2015, the trial court held a hearing on Appellee's petition. By order of March 3, 2015, the trial court terminated Appellant's parental rights on the ground of abandonment by willful failure to visit and upon its finding that termination of Appellant's parental rights was in the child's best interest. Appellant appeals.

## II. Issues

Appellant raises two issues as stated in her brief:

1. Did the trial court err in finding that the Appellant had abandoned the child by willfully failing to visit within the four month period immediately preceding the Petition for Adoption?

2. Did the trial court err in finding that termination of Appellant's parental rights was in the best interest of the minor child?

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (Tenn. 1972); *Nash–Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash–Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted

is highly probable ... and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

In its order terminating Appellant's parental rights, the trial court made a specific finding that Appellee was a credible witness. When the resolution of an issue in a case depends on the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997); *McCaleb v. Saturn Corp*., 910 S.W.2d 412, 415 (Tenn. 1995). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See Whitaker*, 957 S.W.2d at 837; *McCaleb*, 910 S.W.2d at 415; *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997).

## IV. Abandonment by Willful Failure to Visit

Tennessee Code Annotated Section 36-1-113(g)(1) provides that termination of parental rights may be based upon the ground of "[a]bandonment by the parent or guardian, as defined in Section 36-1-102...." Tennessee Code Annotated Section 36-1-102(1)(A)(i) defines abandonment, in relevant part, as follows:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or a guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that a parent or parents or a guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

*Id.*

In its order terminating Appellant's parental rights, the trial court noted that "[a]lthough it is not disputed that [Appellant] did not visit within the four month period, she states her failure to visit was not willful due to [Appellee's] interference." Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn.Ct.App.2005). Willfulness depends on the actor's intent, and intent is seldom capable of direct proof. *Id.* Therefore, the trier-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct. *Id*. "Whether a parent failed to visit or support their child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d 636, 649 (Tenn.Ct.App.2013) (citing *In re Adoption of A.M.H*., 215 S.W.3d 793, 810 (Tenn. 2007)).

In its order, the trial court made the following, relevant findings concerning the ground of willful abandonment:

> The record in this case does not support [Appellant's] claim her visitation was thwarted by [Appellee]. [Appellant's] assertions of her visitation attempts were vague, nonspecific as to time and place and were without corroboration. [Appellee] denies interfering with [Appellant's] visitation. The court finds [Appellee] to be a credible witness. The present case is much like *In the Matter of M.L.P.*, 281 S.W.3d 387 (Tenn. 2009) where the father asserted his failure to visit was thwarted by the child's custodian. Father called custodian for visitation six to eight times, and the custodian would state "I don't think it's a great idea right now." The Supreme Court of Tennessee held "while father's early attempts to visit M.L.P. had been discouraged by the Great Aunt, Father did not make any attempt to contact or visit M.L.P. for more than one year prior to the petition to terminate parental rights." The Supreme Court affirmed the Court of Appeals decision to terminate father's parental rights.
>
> The court finds by clear and convincing evidence [Appellant] abandoned [B.C.] by willfully failing to visit within the four months preceding March 14, 2012. Any visitation efforts by [Appellant] were "token" or perfunctory visits where [Appellant] was "merely present but disinterested and had no objectively reasonable action geared toward establishing a healthy parental relationship." *In re Keri C.*, 384 S.W.3d 731 (Tenn. Ct. App. 2010) T.C.A. §36-1-102(1)(c).

Turning to the record, concerning Appellant's visitation with the child, Appellee testified, in relevant part, as follows:

Q. So, let's concentrate on the four months immediately preceding this filing [of the petition for adoption on March 14, 2012] . . . . November, December, January, February, in those four . . . months, did [Appellant] come to you and ask for visitation on her weekends?

A. No, sir.

Q. In those four . . . months immediately before you filed this petition, did you deny [Appellant], her visitation over that four . . . months?

A. No, sir.

Appellee further testified that Appellant had not visited the child at Appellee's home, nor had the Appellant taken the child to her home in the four months prior to the filing of the petition for adoption. Although Appellant attempted to refute Appellee's claim that she had not thwarted Appellant's visitation, the trial court found that Appellant's "assertions of her visitation attempts were vague, nonspecific as to time and place and were without corroboration." Following our review of the evidence and Appellant's testimony, we agree with the trial court's assessment. There is simply not enough evidence to support Appellant's claim that her visitation was thwarted by Appellee.

The trial court acknowledged the fact that Appellant filed a petition, in February of 2012, in the Juvenile Court seeking visitation; however, the court noted that Appellant did not appear at the hearing on her petition, and the petition was dismissed. Our Supreme Court has held that a parent "who actively pursued legal proceedings to regain custody during the abandonment period" did not willfully fail to visit. *In re Adoption of A.M.H*., 215 S.W.3d at 890. Here, however, the trial court's order notes that although Appellant "did file a petition for contempt to enforce her visitation . . . she failed to appear at the court date, and her petition was dismissed." The trial court found that "[t]his attempt to enforce her visitation does not rise to her 'actively pursuing her rights.'" In this regard, the instant appeal is similar to *In re Adoption of Angela E., et al.*, 402 S.W.3d 636 (Tenn. 2013). In that case, the Supreme Court upheld the termination of father's parental rights on the ground of abandonment by willful failure to visit. The Court specifically held that although father had filed a petition seeking visitation, he

took no action to advance the petition. Father had no reasonable excuse for failing to pursue the petition to reinstate visitation during those two years. We

6

therefore conclude that the record contains clear and convincing evidence supporting termination of Father's parental rights on the ground of abandonment based on willful failure to visit.

*Id*. at 642. The same is true in the instant case, where Appellant filed a petition seeking visitation, but failed to advance the petition. Other than the petition filed in the Juvenile Court, which, for the reasons stated *supra*, is not sufficient to negate the willfulness element of the abandonment ground, it is undisputed that Appellant failed to visit during the four month period immediately preceding the filing of the petition to terminate her rights and for adoption. Accordingly, we conclude that the record clearly and convincingly supports termination of Appellant's parental rights on the ground of abandonment by willful failure to visit.

## V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005). The focus shifts to the child's best interest. *Id*. at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to the instant case, these factors include, but are not limited to, the following:

> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

In its order terminating Appellant's parental rights, the trial court made the following findings concerning B.C.'s best interest:

> The record is clear [B.C.] is in a safe and suitable home, even [Appellant] acknowledges this fact. The home study states that [Appellee] is an "excellent adoptive mother," and she has an "appropriate adoptive home." There is a meaningful relationship between [Appellee] and [B.C.]. [B.C.] has been in [Appellee's] care for all of her eight years except for her first three months after birth. No meaningful relationship exists between [Appellant] and [B.C.]. The proof is clear and convincing that terminating [Appellant's] parental rights is in [B.C.'s] best interest.

From our review of the record, we agree with the trial court's findings. Appellant, herself, admits that Appellee has provided a "good home" for B.C. The child has been in Appellee's home since she was approximately three months old; accordingly, Appellee's home is the only home B.C. has ever known. The record indicates that B.C. is doing well in Appellee's home and that she is making good grades in school. There is evidence that B.C. is well-adjusted and that she has a bond with Appellee. On the other hand, there is no indication that B.C. has any bond with the Appellant. Due to the Appellant's lack of visitation, there has been no consistent contact between the Appellant and the child. To remove this child from the home where she has lived for nine years and, indeed, the only home she has ever known,

8

would, in the eyes of this Court, likely cause the child emotional and psychological problems. Therefore, from the totality of the circumstance and the record, we conclude that there is clear and convincing evidence that termination of Appellant's parental rights is in the child's best interest.

## VI. Conclusion

For the foregoing reasons, we affirm the order of the trial court terminating Appellant's parental rights. We remand the case for such further proceedings as may be necessary and are consistent with the opinion. Costs of the appeal are assessed against the Appellant, J.P. Because J.P. is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.

_____
KENNY ARMSTRONG, JUDGE